IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LA CLINICA DE LA RAZA, INC.,

      Plaintiff,

  v.

CAL. DEP'T OF HEALTH CARE SERVICES, et al.,

      Defendants.

No. C 10-4605 CW

ORDER DENYING MOTION FOR INJUNCTION PENDING APPEAL

(Docket No. 94)

On May 13, 2014, this Court entered an order granting in part and denying in part Defendants' motion for summary judgment and denying Plaintiff's cross-motion for summary judgment. Docket No. 78.[1] Plaintiff appealed to the Ninth Circuit Court of Appeals, which appeal remains pending. Docket No. 90. On July 30, 2015, Plaintiff filed a motion for an injunction pending appeal. Docket No. 94. For the reasons explained below, the Court now denies Plaintiff's motion.

## BACKGROUND

The following facts are taken from the Court's May 13, 2014 summary judgment order with minor modifications and additions. Plaintiff is a nonprofit healthcare organization which provides

---

[1] The above-captioned case is related to three other cases. The May 13, 2014 order resolved motions that were filed by several additional parties not currently before the Court. This order omits mention of the additional parties, except where relevant to the current dispute, for clarity.

medical services to low-income communities in the San Francisco bay area.  Plaintiff receives funding from the United States and the State of California (the Governments) under the Medicaid and Medicare programs for operating as a "federally-qualified health center" (FQHC).  As a condition of this funding, Plaintiff is required to report certain information about its operations and finances to the Governments.  This action arises out of a dispute concerning the State's method of reimbursing Plaintiff for certain services Plaintiff provides under the Medicare Part D program.

Medicare is a federal health insurance program that provides benefits to people with disabilities and people over age sixty-five.  See 42 U.S.C. §§ 1395 et seq.  The Medicare Act is divided into several parts, each of which deals with a different set of benefits.  Part D, which pertains to prescription drug benefits, is the only part relevant here.

In 2006, Congress passed legislation expanding Part D coverage to individuals who qualify for benefits under both Medicaid and Medicare, a group known as "dual-eligibles."  This legislation effectively shifted responsibility for paying dual-eligibles' prescription drug costs from state Medicaid programs to Medicare.  See 42 U.S.C. § 1396u-5(d)(1).  Because of this shift, FQHCs in California must now seek reimbursement under Medicare Part D, rather than Medi-Cal, for the prescription drug services they provide to dual-eligibles.  Previously, FQHCs were reimbursed for these services in the same way that they were reimbursed for

2

all other of the other services they provided to Medi-Cal beneficiaries: that is, a combination of wraparound payments (the name given to a system for estimating how much a FQHC is owed) and reconciliation payments (the annual process under which a more precise calculation of compensation is determined).

After the 2006 legislation, the California Department of Health Care Services (DHCS) offered FQHCs two options for seeking reimbursement for prescription drug services under Medicare Part D.  Under the first option (Option 1), the FQHC would adjust its per-visit reimbursement rate by subtracting the costs of all prescription drug services, for both dual-eligibles and other Medi-Cal beneficiaries, and seek reimbursements directly from the Department of Health and Human Services (HHS) for its services to dual-eligibles; DHCS would then reimburse the FQHC at a separate per-visit rate for the prescription drug services it provided to <u>non</u> dual-eligibles.  Under the second option (Option 2), the FQHC would continue to receive reimbursements from DHCS at the same per-visit reimbursement rate but, during the annual reconciliation process, would pay back to DHCS any funding that the FQHC received under Medicare Part D during that fiscal year for its prescription drug services to dual-eligibles.  Following the Part D expansion, Plaintiff chose to proceed under Option 2.

In June 2010, another FQHC, North East Medical Services (NEMS), not a party to this action, filed a declaratory judgment action against DHCS and its director challenging the agency's

3

efforts to implement the Medicare Part D expansion in California. Specifically, NEMS alleged that both reimbursement options offered by DHCS violated federal law. Plaintiff, represented by the same counsel as NEMS, filed this nearly identical action against DHCS and its director in October 2010. The two cases were consolidated in November 2010, with Judge Richard Seeborg presiding.

In June 2011, Judge Seeborg dismissed Plaintiff's and NEMS's claims. He found that, because they were seeking to recover Part D funds that they had previously paid to DHCS under Option 2, they were essentially asserting claims against the State for retrospective monetary relief, which is precluded by the Eleventh Amendment to the United States Constitution. Plaintiff and NEMS appealed the order of dismissal in July 2011.

In April 2013, the Ninth Circuit affirmed the order of dismissal in part and reversed it in part. North East Med. Servs. v. Cal. Dep't Health Care Servs., 712 F.3d 461, 470-71 (9th Cir. 2013) (NEMS). It held that the district court properly found that the Eleventh Amendment barred Plaintiff and NEMS from pursuing monetary relief but erred in dismissing the claims in their entirety. It reasoned that some of the claims against the director of DHCS could potentially be construed as injunctive relief claims and "under Ex parte Young, the Eleventh Amendment generally does not bar suits for prospective, non-monetary relief against state officers." Id. at 466. The court highlighted two claims, in particular, that might fall under the Ex Parte Young

4

exception to the Eleventh Amendment. First, it found that one of NEMS's claims could be construed as claim for prospective relief insofar as NEMS was seeking to avoid future liability for its past failures to comply with Option 2, such as when it refused to pay DHCS the Medicare Part D money that it received in 2008. Id. at 470 ("While California has not demanded payment, it has maintained that it is entitled to it. This leaves open the possibility that California will prospectively apply Option 2 to NEMS for fiscal year 2008 when California tries to extract payment from NEMS in the future."). Second, the court found that one of Plaintiff's claims might also be construed as a claim for prospective relief insofar as it was seeking to avoid complying with its obligations under Option 2 in the future.[2] Id. ("La Clinica continues to pay Medicare Part D payments over to California under Option 2. As such, it argues that it is entitled to declaratory and injunctive relief barring any future attempt by California to collect La Clinica's Part D payments."). Because the Ninth Circuit found that both of these claims "arguably seek genuine prospective relief," id. at 466, it remanded "to allow the district court to assess Ex Parte Young's application to: (1) NEMS's claim to injunctive relief for fiscal year 2008, and (2) Plaintiff's claims arising from prospective application of Option 2." Id. at 471.

---

[2] The Ninth Circuit did not find that NEMS's claims for declaratory relief regarding DHCS's future enforcement of Option 1 contained a prospective component. This is likely because "NEMS conceded in both its briefing and at oral argument that it suffers no ongoing harm since proceeding under Option 1." NEMS, 712 F.3d at 465.

5

Following remand, the cases were related to two other pending cases and reassigned to this Court. Docket No. 28. Defendants, along with the United States of America (as a defendant in the related cases) filed a motion for summary judgment. Docket No. 50. Plaintiff and NEMS filed a cross-motion for summary judgment. Docket No. 65.

In the portion of the order relevant here, the Court held that <u>Ex Parte Young</u> did not apply to NEMS's claim because NEMS was seeking retrospective monetary relief; that is, in the context of Medicaid payments, NEMS was seeking reimbursement for services already rendered. Accordingly, the Eleventh Amendment barred NEMS's claims. The Court held that the Eleventh Amendment did not bar Plaintiff's claim because Plaintiff was not seeking compensation for services it had already rendered. However, the Court determined that Plaintiff's claim was moot because Plaintiff could still elect to proceed under Option 1. The Court also rejected Plaintiff's and NEMS's argument that Option 2 violates federal law for an additional and independently adequate reason: that neither Plaintiff nor NEMS presented sufficient evidence to support an inference that Option 2 violates federal law. Plaintiff moved for leave to file a motion for reconsideration; the Court denied the motion and entered judgment. Docket Nos. 85 and 89. Plaintiff then filed its notice of appeal to the Ninth Circuit Court of Appeals.

6

There appears to have been no subsequent relevant interaction between the parties until May 15, 2015, when DHCS contacted Plaintiff to request a reporting of Plaintiff's Part D revenues for dual-eligible patients from fiscal year 2011.  Docket No. 96-2, Ex. A.  Then, on June 23, 2015, DHCS sent a written notice that it would begin the reconciliation process to determine whether Plaintiff had been under- or overpaid for fiscal year 2011.  Plaintiff requested that DHCS delay the reconciliations because the payments were the subject of litigation on appeal before the Ninth Circuit, but DHCS indicated it would move forward with the reconciliation process unless Plaintiff could provide an injunctive order prohibiting DHCS from proceeding.  On July 29, 2015, DHCS issued final settlements for the reconciliation requests.  The final settlements show that Plaintiff owes $100,111.00 for one clinic and $28,374.00 for a second clinic; the total amount due is thus $128,485.00.  Docket No. 96-2, Exs. B and C.  The following day, July 30, 2015, Plaintiff filed this motion seeking an injunction against "all actions by [Defendants] with respect to [Plaintiff's] pending reconciliation requests" until resolution of its appeal.  Docket No. 94.

## LEGAL STANDARD

The Court may employ either of two different frameworks to determine whether to grant an injunction pending appeal.  Southeast Alaska Conservation Counsel v. U.S. Army Corps of Engineers, 472 F.3d 1097, 1100 (9th Cir. 2006).  Under the

7

"traditional test" the moving party must show "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to the plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." Id. (internal quotations omitted).  Under the "alternative test" the moving party must show "either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor." Id. (internal quotations omitted).  "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases.  They are not separate tests but rather outer reaches of a single continuum." Id. (internal quotations omitted, capitalization modified).

## ANALYSIS

A. Plaintiff's Waiver of Relief

In its opposition, Defendants first argue that there is no basis for granting a stay because Plaintiff waived any claim to relief involving the services included in the pending reconciliation requests when it did not appeal this Court's conclusion that relief sought for services provided in the past

8

are retroactive claims barred by the Eleventh Amendment.[3] Defendants argue that, because Plaintiff did not appeal on this ground, the Ninth Circuit's eventual ruling cannot possibly undo this Court's holding that claims for past services are barred, and accordingly granting a stay is inappropriate. In reply, Plaintiff argues that its case has often been commingled with facts and arguments presented by NEMS; thus, according to Plaintiff, it does not matter that Plaintiff did not raise the question on appeal because, presumably, NEMS did.[4]

While the Court agrees that it appears that the Ninth Circuit's decision could not result in Plaintiff being able to keep the money due, as explained below, the Court concludes that analysis under the two established tests for preliminary injunctions clearly results in denial of Plaintiff's motion. The Court, accordingly, proceeds to the analysis under the established framework.

---

[3] Plaintiff's opening brief articulates two issues presented for review: (1) whether this Court erred in denying its claim for prospective injunctive relief as moot and (2) whether this Court erred in finding that Plaintiff did not present sufficient evidence that Option 2 violates federal law. Docket No. 96-1.

[4] Plaintiff provides no proof that NEMS is actually pursuing this claim on appeal. Instead, Plaintiff implies that NEMS has appealed on this ground, arguing that Defendants' argument creates "artificial distinctions between NEMS and [Plaintiff]" and alleges "that an argument raised by NEMS cannot also be raised by [Plaintiff]." Reply Brief (Docket No. 97) at 3.

B. The Traditional Test

The first showing Plaintiff must make under the "traditional test" is that it is likely to succeed on the merits of its claim. Southeast Alaska Conservation Counsel, 472 F.3d at 1100. Plaintiff has not made a strong showing in this regard. In the order on the motions for summary judgment, the Court found that Plaintiff's claim was moot because Plaintiff could still elect to proceed under Option 1. Plaintiff first argues that it is likely to succeed on its appeal because Option 1 is not lawful. Plaintiff asserts that it is unlawful because the only way that Option 1 can be lawful is if Plaintiff agrees to accept Option 1 and it has not done so. But the Court did not deny Plaintiff's claims on the basis that Plaintiff had accepted Option 1; the Court denied Plaintiff's claims because Plaintiff did not present any evidence to suggest that it could not proceed under Option 1. Plaintiff's argument that the only threat to Option 1's legality is that Plaintiff has chosen not to elect it only underscores the viability of Option 1. Plaintiff next argues that the Court misunderstood its claim regarding Option 2. This is the exact argument Plaintiff made, and the Court rejected, in its motion for leave to file a motion for reconsideration. Accordingly, as explained above and in the order denying Plaintiff's motion for leave to file a motion for reconsideration, the Court concludes that Plaintiff has not shown that it is likely to succeed on the merits of its claim.

10

The second prong of the traditional test requires Plaintiff to show that it will suffer irreparable harm absent an injunction. Plaintiff has not made such a showing. Plaintiff argues that if it is required to pay the settlement amount for the reconciliation request, it will have no adequate legal remedy in federal court because its claims would then be characterized as seeking retrospective monetary damages and would be, therefore, barred by the Eleventh Amendment. However, as Defendants show, if Plaintiff is required to pay the settlement amount, it will merely lose the federal forum for that claim, but it will still have the option to file an administrative appeal and to seek a writ of administrative mandate in state court if it loses its administrative appeal. Plaintiff does not dispute the adequacy or availability of a state forum for relief in its reply brief. Accordingly, the Court concludes that Plaintiff has not shown that it will be irreparably harmed absent an injunction.

The third prong requires a showing that the balance of harms weighs in favor of granting the injunction. Plaintiff argues that issuing the stay will preserve the status quo and permit Plaintiff to use the income to "further the objectives of its Section 330 grant, including serving additional patients and providing additional services to the residents of its service area." Motion Brief (Docket No. 94) at 10. That Plaintiff could effect greater community service with the funds at issue is not relevant to the inquiry. The Court has determined that Plaintiff's arguments

11

regarding Option 2 do not warrant relief, and the result of the reconciliation process is that Plaintiff was overpaid and must now pay Defendants the amount of that overpayment.  While Plaintiff must relinquish its overpayments, this does not constitute harm in a legal sense because it was not entitled to the funds in the first place.  On the other hand, Defendants are harmed if they are delayed in recouping the funds to which they are entitled.  The harm in denying Defendants the funds these funds may be modest, but it outweighs any harm Plaintiff claims.  Thus, the balance of harms tips in Defendants' favor.

The final prong of the traditional test requires Plaintiff to show that the public interest is served by granting the injunction.  Plaintiff again argues that the funds would allow it to serve the community; that argument is no more persuasive under this prong than it was on prong three of the test.  And finally Plaintiff argues that the public interest is served by granting the stay so that the federal court retains jurisdiction.  The Court is not persuaded, considering the above-discussed availability of an alternative forum for Plaintiff's claims.

In sum, Plaintiff has not shown entitlement to a preliminary injunction pending appeal under the traditional test.

C. The Alternative Test

Under the "alternative test" the moving party must show "either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are

raised and the balance of hardships tips sharply in his favor." Southeast Alaska Conservation Counsel, 472 F.3d at 1100 (internal quotations omitted). For the reasons articulated under the traditional test, Plaintiff has shown neither a probability of success on the merits nor irreparable injury. Further, Plaintiff has not shown that any serious questions are raised and, as discussed above, the balance of hardships does not weigh in favor of granting a stay. Accordingly, Plaintiff is not entitled to an injunction under the alternative test.

For the reasons stated above, Plaintiff's motion for an injunction pending appeal is denied.

IT IS SO ORDERED.

Dated: September 11, 2015

CLAUDIA WILKEN
United States District Judge

13